UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| The Northern Assurance Company of America, | Court File No.: _____ |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| Steadfast Insurance Company, | **(Jury Trial Demanded)** |
| Defendant. | |

The Northern Assurance Company of America ("Northern"), for its Complaint against Steadfast Insurance Company ("Steadfast"), states and alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Northern is a Massachusetts corporation with its principal place of business in Canton, Massachusetts. Northern is licensed to and does insurance business in Missouri, and has a claims office in Chesterfield, Missouri.

2. Steadfast is a Delaware corporation with its principal place of business in Schaumberg, Illinois. Steadfast is licensed to and does insurance business in Missouri. Steadfast insured Northern's claims-handling activities in (among other places) Missouri.

3. There is diversity of citizenship between Northern and Steadfast, and the amount in controversy exceeds $75,000. The Court has jurisdiction over Northern's action under 28 U.S.C. § 1332.

4.      Venue in the United States District Court for the Eastern District of Missouri (Eastern Division) is proper under 28 U.S.C. § 1391.  A substantial part of the events and omissions giving rise to this action occurred in the Eastern District of Missouri.

### **FACTS GIVING RISE TO STEADFAST'S LIABILITY**

#### *Introduction*

5.      This action arises out of Steadfast's breach of Section III.D. of an excess liability policy it sold to Northern, as well as its violation of Mo. Rev. Stat. § 375.420.  Steadfast's policy was excess of an underlying "Insurance Company Professional Liability" insurance policy issued by Westchester Fire Insurance Company ("Westchester").  Westchester's policy was excess of Northern's self-insured retention.

#### *Steadfast's Excess Liability Insurance Policy*

6.      Steadfast sold and issued its excess liability insurance policy no. IPR 3757632-01 to Northern's parent, White Mountains Insurance Group, Ltd. ("White Mountains"), for the period November 1, 2006 to November 1, 2009.  White Mountains paid all the premiums Steadfast charged for the policy.  Northern is an insured under the policy because it is a subsidiary of White Mountains.

7.      In its policy, Steadfast promised to provide Northern with coverage during the policy period for "Loss" in excess of the Westchester policy's Insurance Company Professional Liability coverage.  Steadfast's policy defines "Loss" to mean "the total amount of monetary damages and expenses incurred by the Insured . . . arising from an Event for which coverage applies."  Steadfast's policy defines "Event" to mean "an act,

occurrence or claim (as defined in the [Westchester Policy]) which triggers coverage under [the Westchester Policy]."

8. The Steadfast policy is a follow-form policy. With certain exceptions, coverage under Steadfast's policy applies in accordance with the terms of the Westchester policy. Steadfast's policy states:

> Coverage under this policy shall apply in conformance with and subject to the definitions, insuring clause(s), exclusions and conditions of the [Westchester policy] applicable to the coverage provided as in effect on the inception date of this policy, unless such definitions, insuring clause(s), exclusions and conditions are inconsistent with this policy. In the event of any conflict between the definitions, insuring clause(s), exclusions or conditions used in this policy and the [Westchester policy], then the definitions, insuring clause(s), exclusions or conditions of this policy shall govern.

9. Section III.D. of Steadfast's policy provides in pertinent part:

> [Northern agrees] not to settle any claim, incur any Defense Costs or otherwise assume any contractual obligation or admit any liability with respect to any claim without [Steadfast's] written consent. [Steadfast] shall not be liable for any settlement, Defense Costs, assumed obligation or admission to which it has not consented in writing.
> . . . .
> [Steadfast] shall not unreasonably withhold any consent referenced in this [subsection].

### *Westchester's Underlying "Insurance Company Professional Liability" Coverage*

10. To the extent not inconsistent with its terms, Steadfast's policy follows the terms of the Insuring Clause in the Westchester policy's Insurance Company Professional Liability Coverage Part. Through that Insuring Clause, Steadfast promised to pay on behalf of Northern "Loss which [Northern] become[s] legally obligated to pay by reason

- 3 -

of any Claim first made by a policyholder or third party client of [Northern] against [Northern] during the Policy Period or any applicable Discovery Period for any Wrongful Acts by [Northern] or by a person or entity for whom [Northern is] legally responsible in rendering or failing to render Professional Services, if such Wrongful Acts take place prior to the end of the [11/1/08 – 11/1/09] Policy Period.

11. Westchester's policy defines "Loss" as follows:

> Loss means the amount which [Northern] become[s] legally obligated to pay on account of each Claim and for all Claims in the Policy Period . . . made against them for Wrongful Acts for which coverage applies, including, but not limited to, damages, judgments, any award of pre-judgment and post-judgment interest, settlements and Defense Costs. Loss does not include (1) any amount for which the [Northern is] absolved from payment, (2) taxes, fines or penalties imposed by law, or (3) matters uninsurable under the law pursuant to which this policy is construed. This definition does not exclude punitive, exemplary or multiple damages to the extent such damages are insurable under the internal laws of any jurisdiction which has a substantial relationship to the Insureds, the Insurer, this Policy or such Claim.

12. Westchester's policy defines "Wrongful Act" to mean "any error, misstatement, misleading statement, act, omission, neglect or breach of duty actually or allegedly committed or attempted the Insured Persons in their capacity as such or by [Northern] or by any person or organization for whom [Northern is] legally responsible."

13. Westchester's policy defines "Insured Persons" to mean "any one or more persons who were, now are or shall become duly elected or appointed directors, trustees or officers of, or employees of, [Northern] . . . ."

14. Westchester's policy defines "Professional Services" to mean "services performed by or on behalf of [Northern] for a policyholder or third party client of

[Northern]. The Professional Services must be performed pursuant to a written contract with such policyholder or client for consideration inuring to the benefit of the Company."

### *Steadfast's Breach and Unreasonable Refusal*

15.  In December 2008, employees in Northern's Chesterfield claims office denied coverage of a personal-injury claim against one of its Missouri policyholders. The Missouri personal-injury claimant thereafter settled with Northern's policyholder pursuant to Mo. Rev. Stat. § 537.065, and then sued Northern. After Northern and its defense counsel investigated and assessed the allegations in the personal-injury claimant's petition, they ultimately concluded that those allegations presented a settlement value that would implicate Northern's self-insured retention and the Westchester and Steadfast policies, up to their limits. With approval from both Westchester and Steadfast, Northern agreed to participate in a mediation with the personal-injury claimant to try to resolve the lawsuit against Northern.

16.  In the two months before the mediation, representatives from Northern, Westchester and Steadfast participated in at least eight conference calls regarding the merits of the personal-injury claimant's lawsuit against Northern and its settlement value. Northern provided Westchester and Steadfast with thorough documentation and chronologies regarding the facts of the case, as well as detailed memos setting forth jury verdict research and analysis. At no time during this two-month period did Steadfast state any disagreement regarding Northern's conclusion that the lawsuit against Northern presented a value that would implicate Steadfast's policy, up to its limits.

17.   Throughout the day of the mediation, Northern kept Steadfast's in-house claims representative and outside counsel apprised of developments via phone numbers provided by Steadfast.  By the end of the afternoon, Steadfast was well aware that Northern was willing to tender its full self-insured retention, and that Westchester was willing to tender its full policy limit, to resolve the lawsuit against Northern, thus invoking Steadfast's coverage.  At about 5:00 p.m., however, Steadfast's in-house claims representative, who had or should have had authority to resolve the lawsuit against Northern for Steadfast's full policy limit, abandoned the mediation with no in-house representative to replace her.  Instead, Steadfast was represented by outside counsel who did not have that authority.

18.   Thereafter, ten days after the mediation, Steadfast sent Northern a letter that set forth an incomplete rendition of Northern's analysis and valuation leading up to the mediation, and the developments transpiring during the mediation.  Steadfast's post-mediation letter also raised, for the first time, assertions regarding Northern's jury verdict research and calculations.  Steadfast had that research and analysis in its possession for 2½ weeks before the mediation, yet never raised any disagreement with that information at any time before or during the mediation, or until its letter ten days after the mediation.

19.   Steadfast breached Section III.D. of its policy, and violated Mo. Rev. Stat. § 375.420, by failing to consider and evaluate, and recklessly disregarding:

   a.   The strength of the claims and allegations in the personal-injury claimant's petition against Northern;

      b.    The amount of damages that might be awarded for those claims and allegations;

      c.    The risk of a jury verdict against Northern in excess of available policy limits;

      d.    The potential uninsured exposure of Northern;

      e.    The financial interests of Northern; and

      f.    Northern's reasonable expectations of coverage.

## COUNT ONE
### *(Declaratory Judgment)*

20.    Northern incorporates and reasserts the statements and allegations in paragraphs 1 through 19 above.

21.    Steadfast breached the liability insurance policy it issued to Northern.

22.    Steadfast denies the allegations in the preceding paragraph.  An actual and justiciable controversy therefore exists between Northern and Steadfast.

      WHEREFORE, Northern requests judgment against Steadfast declaring that:

      a)    Steadfast breached the insurance policy it issued to Northern;

      b)    Steadfast is obligated to pay any and all damages, interest, attorney fees, expenses and costs allowed by law;

      c)    Steadfast is obligated to provide Northern with all other relief that this Court deems to be allowed by law or otherwise just, appropriate, necessary or proper.

## COUNT TWO
### *(Breach of Contract)*

23.     Northern incorporates and reasserts the statements and allegations in paragraphs 1 through 22 above.

24.     Steadfast breached the liability insurance policy it issued to Northern;

25.     Northern has incurred and will continue to incur damages as a result of Steadfast's breach of its contractual duties.

WHEREFORE, Northern requests a judgment against Steadfast, awarding to Northern:

a)     Any and all damages, interest, expenses and/or costs allowed by law; and

b)     All other relief that this Court deems to be allowed by law or otherwise just, appropriate, necessary or proper.

## COUNT THREE
### *(Mo. Rev. Stat. § 375.420)*

26.     Northern incorporates and reasserts the statements and allegations in paragraphs 1 through 25 above.

27.     Steadfast's conduct was without reasonable cause or excuse.

WHEREFORE, Northern requests a judgment against Steadfast, awarding to Northern:

a)     Any and all damages allowed by Mo. Rev. Stat. § 375.420;

b)     All interest, attorney fees, expenses and costs allowed by law; and

      c)    All other relief that this Court deems to be allowed by law or otherwise just, appropriate, necessary or proper.

## **JURY TRIAL DEMANDED**

Plaintiff demands a trial by jury.

DATED: October 18, 2010

                        **ARMSTRONG TEASDALE LLP**

BY: */s/ Wilbur L. Tomlinson*
    Clark H. Cole<EDMo>2850
Wilbur L. Tomlinson<EDMo>4561
    7700 Forsyth Blvd., Suite 1800
    St. Louis, Missouri 63105
    314.621.5070
    314.621.5065 (facsimile)
    ccole@armstrongteasdale.com
    wtomlinson@armstrongteasdale.com